DeMOSS, Circuit Judge:
Plaintiffs-Appellants, Melba Irvin, et al. (the “Irvins”), appeal the granting of summary judgment by the district court for Defendants-Appellees, and the subsequent denial of the Irvins’ Rule 59(e) motion to alter, amend, and reconsider in a toxic tort action arising from a chemical release from Defendants’ facility.
BACKGROUND AND PROCEDURAL HISTORY
This case arises out of claims brought in state court relating to the release of a mustard gas agent at the Georgia Gulf Corporation facility in Plaquemine, Louisiana, that occurred on or about September 25, 1996. On November 8, 1996, suit was filed in state district court, asserting claims against multiple defendants, including Georgia Gulf Corporation, X.L. Insurance Company, Primex, Ltd., HydroChem Industrial Services, Inc., Payne & Keller Company, Inc., Master Maintenance & Construction, Inc., Amoco Energy Trading Corporation, Louisiana Intrastate Gas Company, L.L.C., and LIG Liquids Company, L.L.C. (collectively, the “Defendants”).
On March 5, 1999, X.L. Insurance Company and Primex, Ltd. removed the case to federal court, asserting jurisdiction under the Convention of the Recognition and Enforcement of Foreign Arbitral Awards pursuant to 9 U.S.C. § 201 et seq. X.L. Insurance Company and Primex, Ltd. are foreign insurance companies who were named as defendants in this action pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. § 22:655. The Irvins filed a motion to remand on April 5, 1999, that was denied by the district court on June 9, 1999.
The Irvins, who were added as additional plaintiffs to the original state court proceeding in March and September 1997, maintain that they sustained injuries as a direct and proximate result of the negligence of the Defendants. Since joining as plaintiffs, the Irvins have been represented by four separate sets of attorneys. On January 7, 2002, the Irvins’ second set of counsel, Albert Bensabat and Daniel Edwards, filed a motion to establish discovery cutoff and trial dates and/or a status conference. On March 1, 2002, the magistrate held a status conference where she set discovery deadlines, ordering the Irvins to: 1) provide the Defendants with all medical reports by March 15, 2002; 2) list all' treating physicians and identify all experts by July 1, 2002; and 3) submit all expert reports by August 1, 2002. On March 14, 2002, one day before the Irvins were ordered to provide the Defendants all medical reports, Bensabat and Edwards filed a motion to withdraw as counsel for the Ir-vins. The following day the magistrate granted the motion to withdraw. Thereafter, the Irvins failed to identify any experts or produce any medical or expert *476 reports in compliance with the court’s deadlines.
On August 22, 2002, George Tucker enrolled as counsel for the Irvins. The district court held a status conference on August 27, 2002, that was attended by Mr. Tucker, appearing on behalf of the Irvins. The district court judge entered an order the following day referring the matter to the magistrate for entry of scheduling orders and trial preparation “anticipating a trial date in March or April 2003.” On August 30, 2002, the Defendants filed a motion for summary judgment and/or dismissal, asserting that the Irvins had failed to satisfy the elements of their claim. Specifically, the Defendants maintained that the Irvins could not, through the requisite expert evidence, establish negligence on the part of the Defendants, nor could they establish causation and damages. In the alternative, the Defendants sought the dismissal of the Irvins’ claims for their failure to adhere to the court-ordered deadlines. The Irvins did not file any opposition to the Defendants’ motion for summary judgment.
On October 30, 2002, the district court issued its ruling granting the Defendants’ motion for summary judgment. The district court stated:
In this ease, plaintiffs have alleged that they suffered harm by exposure to the mustard gas release but have failed to produce any evidence whatsoever of such injury. In a toxic tort case such as this ... medical evidence is essential to establish harm to plaintiffs. Without having produced any medical evidence, plaintiffs cannot establish that they suffered damages, an essential element of their case.
Subsequently, on November 5, 2002, George Tucker, the Irvins’ counsel, filed a motion to withdraw from the case. The district court granted the withdrawal on November 20, 2002, and entered judgment dismissing the Irvins’ case the following day.
On December 6, 2002, the Irvins obtained new counsel, who immediately filed a Fed.R.Civ.P. 59(e) motion to alter, amend, and reconsider the judgment. Specifically, the Irvins requested that the district court reconsider and vacate the November 21, 2002, judgment to prevent manifest injustice. On February 4, 2003, the district court denied the Rule 59(e) motion, stating that the motion for summary judgment was filed while the Irvins were represented by counsel, who neither requested a continuance nor sought a rescheduling of deadlines. The Irvins filed a timely notice of appeal on March 3, 2003.
JURISDICTION
This suit was originally filed in Louisiana state district court on November 8, 1996. On March 5, 1999, two of the multiple defendants, X.L. Insurance Company and Primex, Ltd., removed the case to federal district court pursuant to 28 U.S.C. § 1446(d), asserting jurisdiction under the Convention of the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq. The Irvins subsequently filed a motion to remand, which was denied by the district court. The Defendants’ motion for summary judgment was granted, and the district court entered judgment on November 21, 2002. The Ir-vins filed a timely Rule 59(e) motion, which was denied by the district court on February 4, 2003. The Irvins then filed their notice of appeal on March 3, 2003.[1] This *477 Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291.
STANDARD OF REVIEW
7. The Irvins’ Rule 59(e) Motion to Reconsider
The applicable standard of review of the denial of the Irvins’ motion to alter, amend, and reconsider is dependent on whether the district court considered the materials attached to the Irvins’ motion, which were not previously provided to the court.[2] Ford Motor Credit Co. v. Bright, 34 F.3d 322, 324 (5th Cir.1994). If the materials were considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is de novo. Id. However, if the district court refuses to consider the materials, the reviewing court applies the abuse of discretion standard. Id. Under this standard of review, the district court’s decision and decision-making process need only be reasonable. Id.
Based on a review of the district court’s ruling on the motion for reconsideration, it is unclear whether the additional materials submitted by the Irvins were considered by the district court. The district court does not expressly or impliedly refer to the additional materials in its ruling. Therefore, in the absence of any specific reference to these materials, we review the district court’s denial of the Irvins’ Rule 59(e) motion for abuse of discretion, i.e., as if the district court did not consider the additional materials.

II. Defendants’ Motion for Summary Judgment

This Court reviews grants of summary judgment de novo, applying the same standard as the district court. Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 890 (5th Cir.2003). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court views the evidence in a light most favorable to the non-movant. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir.1997). The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the non-movant “fails to make a showing sufficient to establish the existence of an element essential to that party’s case.” Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.
DISCUSSION
7. Whether the district court abused its discretion in denying the Inins’ motion to alter, amend, and reconsider its ruling granting the Defendants’ motion for summary judgment.
The Irvins suggest that the proper method for evaluating a motion for reconsideration of a summary judgment where the movant submits evidentiary materials in support of its motion that were not *478 considered by the court in its summary judgment ruling involves the consideration of the factors enumerated in Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167 (5th Cir.1990), overruled on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir.1994). The Lavespere factors include: 1) the reasons for the moving party’s default; 2) the importance of the omitted evidence to the moving party’s case; 3) whether the evidence was available to the non-movant before it responded to the summary judgment motion; and 4) the likelihood that the non-moving party will suffer unfair prejudice if the ease is reopened. Id. at 174.
Taking these factors in turn, the Irvins argue that their failure to provide the court with the requisite medical reports, lists of treating physicians and all other experts, as well as the Irvins’ medical expert reports was a direct result of the lapse in legal representation that occurred between March 15, 2002, and August 22, 2002. The Irvins contend that the withdrawal by Bensabat and Edwards on March 14, 2002, constituted “client abandonment.” In response, Defendants simply argue that any delays in submitting additional materials to the court “begin and end with the Irvins.”
Second, the Irvins claim that the additional materials included in their motion for reconsideration are critical to their case. Specifically, they argue that the materials include medical evidence linking their “ongoing physical and psychological sufferings” to the exposure to mustard gas at the Georgia Gulf plant. This evidence, the Irvins contend, would have established their entitlement to damages and defeated the Defendants’ motion for summary judgment. The Defendants respond by arguing that the omitted material is not important to the Irvins’ case because it does not change the fact that the Irvins failed to oppose the motion for summary judgment and, in the alternative, inclusion of the materials still does not establish the damages element of their claim.
Third, the Irvins argue that although the information they included in their motion for reconsideration was available to them when the Defendants’ motion for summary judgment was filed, the Irvins were precluded from producing such evidence because the court’s March 1, 2002, scheduling order had established an August 1, 2002, deadline for providing expert information. Therefore, the Irvins contend, because the deadline had already passed, they were unable to produce the relevant expert information without violating the court’s scheduling order. The Defendants simply state that the additional evidence is not “new” because it was available to the Irvins at the time the Defendants filed their motion for summary judgment.
Finally, the Irvins maintain that the Defendants will not be prejudiced if the case is reopened. The Irvins argue that the Defendants were provided medical reports in the Irvins’ responses to the Defendants’ discovery requests. In addition, the Irvins suggest that because there are at least 78 similar cases that have been filed in relation to the same chemical release at issue here, the Defendants are imparted with knowledge of evidence on damages, causation, and liability, and therefore cannot claim prejudice if the case is reopened. Defendants respond by arguing that reopening the case would unfairly prejudice them as they have already expended substantial judicial resources in defending the matter pursuant to the court’s March 1, 2002, scheduling order.
A Rule 59(e) motion “calls into question the correctness of a judgment.” In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir.2002). This Court has held *479 that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Simon v. United States, 891 F.2d 1154, 1159 (5th Cir.1990). Rather, Rule 59(e) “serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.” Waltman v. Int’l Paper Co., 875 F.2d 468, 473 (5th Cir.1989) (internal quotations omitted). Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly. Clancy v. Employers Health Ins. Co., 101 F.Supp.2d 463, 465 (E.D.La.2000) (citing 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124 (2d ed.1995)).
In Lavespere, this Court recognized that while a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration, such discretion is not limitless. 910 F.2d at 174. This Court has identified two important judicial imperatives relating to such a motion: 1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts. Id. (citations omitted). The task for the district court is to strike the proper balance between these competing interests. Id.
In this case, the district court stated that a motion for new trial in a nonjury case or a petition for rehearing pursuant to a Rule 59(e) motion should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons. The district found that the Defendants’ motion for summary judgment was filed while the Irvins “were represented by counsel, who did not request a continuance of the motion or a rescheduling of the deadlines.” The district court also noted that it ruled on the unopposed motion more than sixty days after it was filed, and then issued judgment nearly three weeks later. In denying the Irvins’ motion for reconsideration, the district court stated:
[The Irvins] had ample time prior to the ruling to express some form of opposition to the disposition of their claims or to request additional time to respond. [The Irvins] have been parties to this matter for nearly six years; they have had more than enough opportunities for a “day in court.”
We have held that an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration. Russ v. Int’l Paper Co., 943 F.2d 589, 593 (5th Cir.1991). In this case, the underlying facts were well within the Irvins’ knowledge prior to the district court’s entry of judgment. However, the Irvins failed to include these materials in any form of opposition or response to the Defendants’ motion for summary judgment. Although the Irvins correctly point out that they were not represented by counsel for approximately five months between March and August 2002, they were represented by counsel, George Tucker, before the Defendants filed their motion for summary judgment and after the district court subsequently granted the motion.[3]
By denying the Irvins’ motion for reconsideration, the district court’s decision is not manifestly unjust in law or fact, nor does it ignore newly discovered evidence. The district court reasonably determined that the facts in this case do not warrant the extraordinary relief associated with the *480 granting of a motion for reconsideration. Therefore, the district court did not abuse its discretion in denying the Irvins’ Rule 59(e) motion.

II. Whether the Defendants’ motion for summary judgment was based upon factual misrepresentations.

The Irvins maintain that the judgment dismissing their case was premised on representations of material facts that Defendants knew to be false. Specifically, the Irvins point to two alleged misrepresentations made by Defendants: 1) that the Irvins had not identified any expert witnesses on issues of liability, causation, or damages to support their claims; and 2) that the Irvins had not submitted any expert reports. The Irvins refute these statements, arguing that even though the Irvins had not complied with the deadlines established by the court’s scheduling order, the Defendants were still in possession of “a wealth of expert information and reports” establishing causation and damages in the form of responses to interrogatories and requests for production. In addition, the Irvins contend that their interrogatory responses identified experts they intended to use at trial.
Conversely, the Defendants argue that they have accurately reported all the facts and circumstances supporting their motion for summary judgment, including the Ir-vins’ failure to identify any expert witnesses or provide expert reports on the issues of liability, causation, and damages.
Summary judgment is appropriate where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about the facts. Prinzi v. Keydril Co., 738 F.2d 707, 709 (5th Cir.1984). The district court based its ruling on the finding that the Irvins had not produced any medical evidence, and therefore could not establish that they suffered damages, an essential element of their case. The district court cites Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548, for the rule that a complete failure of proof concerning an essential element of the nonmoving party’s case necessarily renders all other facts immaterial. In addition, Fed.R.Civ.P. 56 mandates that summary judgment shall be entered against a non-movant who fails to set forth specific facts showing that there is a genuine issue for trial.
The Irvins did not deny or controvert the Defendants’ statement of undisputed facts, including the representations made by the Defendants that the Irvins had not “identified any expert witnesses on issues of liability, causation, or damages” or “submitted any expert reports to support their claim.” For that reason, those facts as stated were deemed admitted. Uniform Local Rule, 56.2. However, in the event the moving party relates facts in its summary judgment motion that are untrue or inaccurate, and the court subsequently relies on those misstatements in making its decision, it would be improper to allow the moving party to benefit in such a situation.
After reviewing the record, it seems clear that the Irvins indeed failed to provide either of the two items as detailed by the Defendants. In its ruling granting the Defendants summary judgment, the district court appears to have inadvertently broadened what the Defendants related in their summary judgment motion. Specifically, the court states that the Irvins failed to produce “any medical evidence.” (Emphasis added). The Irvins did in fact respond to written interrogatories as well as provide opposing counsel copies of treating *481 physician reports.[4] However, while these discovery responses may have constituted medical evidence, the Defendants did not state that the Irvins failed to provide evidence, but rather that the Irvins had not produced expert witness lists or expert reports,[5] The real problem facing the Ir-vins is their basic failure to include this evidence in any form of opposition to the Defendants’ summary judgment motion. As such, the district court’s granting of the Defendants’ motion was properly based on true and correct statements of fact.

III. Whether the district court ever reached the issue of the Defendants’ motion for involuntary dismissal, and if so, whether the granting of the motion was an abuse of discretion.

The Irvins insist that the district court based its ruling on the Irvins’ failure to comply with the court’s scheduling order. They argue that although the district court characterized its dismissal of the Irvins’ case as a grant of summary judgment, the court’s rationale for its decision “is more properly viewed as an involuntary sanction dismissal” under Fed.R.Civ.P. 16(f), 37(b), and 41(b) for a party’s failure to appear at a pretrial conference, obey discovery orders, or prosecute an action. In response, the Defendants argue that the district court never ruled on their motion to dismiss, but if the court had, involuntary dismissal would be appropriate.
Based on a review of the district court’s ruling, it appears clear from the reasons the district court articulates that its decision was premised solely on the failure of the Irvins to respond to or oppose the Defendants’ motion for summary judgment. The summary judgment ruling states that because the Irvins could not “establish that they suffered damages, an essential element of their case[,] Defendants are entitled to summary judgment as a matter of law.” In addition, the district court specifically states that it found it “unnecessary ... to consider the alternative motion to dismiss.” Therefore, the Irvins’ third and final issue on appeal is without merit.
CONCLUSION
Having carefully reviewed the record of this case, the parties’ respective briefing and arguments, and for the reasons set forth above, we affirm the district court’s granting of the Defendants’ motion for summary judgment and its subsequent denial of the Irvins’ Rule 59(e) motion to alter, amend, or reconsider.
AFFIRMED.

. In their notice of appeal, the Irvins do not raise any issue as to the propriety of the initial removal of this case from state court nor as to the propriety of the denial of their motion to remand to state court; and we *477 accordingly have not addressed these issues on appeal.

. According to the Irvins’ briefs, the additional materials included reports showing that Mr. Irvin "suffered physical and psychological injuries as a direct and proximate result of his exposure to [sic] mustard gas release at the Georgia Gulf plant."

. At no point during the pendency of this case have the Irvins alleged that any of their counsel were incompetent or incapáble of pursuing their case.

. The interrogatory responses were not identified in the record.

. The treating physician reports submitted by the Irvins would most certainly not satisfy the requirements established by Rule 56(c) and 56(e) for sworn, authenticated summary judgment evidence.